UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PHILIP LANGAN,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Case No. 14-cv-02563-JCS<br><br>**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915, DENYING MOTION FOR SERVICE AS MOOT, AND DENYING PETITION TO WAIVE STANDING ORDER**<br><br>Re: Dkt. Nos. 1, 8, 9 |

## I.  INTRODUCTION

Plaintiff Christopher P. Langan filed this pro se action against twenty-four (24) federal defendants, including the United States, the Defense Finance and Accounting Service ("DFAS"), the Department of Defense, the U.S. Air Force, the Department of the Treasury, the Bureau of Fiscal Service, the Financial Management Service ("FMS"), the Internal Revenue Service ("IRS"), and various former and current officials of each of these entities.  The dispute relates to Langan's compensation upon his separation from the Air Force, which Langan alleges was underpaid and Defendants believe was overpaid.  Langan seeks mandamus relief requiring Defendants to recalculate his separation benefits, expunge his debts, and pay him $36,142.66.  Having previously granted Langan's Application to Proceed in Forma Pauperis, the Court now considers whether Langan's Complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B), which requires dismissal of an in forma pauperis complaint that (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  *See Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).  The Court also considers whether to grant Langan's Motion for Summons and Service by a Marshal (Dkt. 8).  For the reasons stated below, the Court DISMISSES Langan's Complaint with leave to amend, and

1   DENIES AS MOOT Langan's Motion for Service, without prejudice.  **The case management**

2   **conference scheduled for November 7, 2014 is hereby continued to January 9, 2015 at 2:00**

3   **PM in Courtroom G, located on the 15th floor of the San Francisco courthouse at 450**

4   **Golden Gate Avenue.**[1]

5   Langan has also filed a petition (Dkt. 9) to waive this Court's Civil Local Rule 5-1(e)(7)

6   and Civil Standing Order No. 6, requiring parties to lodge printed courtesy copies of papers that

7   require the Court to take action.  That request is DENIED.  Although Langan's in forma pauperis

8   status grants him relief from filing fees and service of process, it does not excuse him from

9   compliance with the rules of the Court.

10  **II.     BACKGROUND**[2]

11  Langan served as an intelligence officer in the United States Air Force, with the rank of

12  Captain.  Compl. ¶ 22(f) & Ex. B-5.  In early 2011, Langan requested voluntary separation from

13  the Air Force effective April 20, 2011 under the Voluntary Separation Pay ("VSP") program.

14  Compl. Ex. C-11.  Langan's commanding officer, Lieutenant Colonel Matthew Atkins, "strongly

15  endorse[d]" this request, noting that Langan had "struggled with judgment and professionalism,"

16  and that "VSP is the perfect opportunity for Capt. Langan to part ways with the Air Force and

17  begin a new career path."  *Id.*  Langan's Wing Commander also supported approval.  *Id.*

18  According to a document attached to Langan's Complaint, an eligible officer approved for VSP

19  receives payment equal to: his monthly base salary, multiplied by 12, multiplied by his total active

20  time of military service (in years and fractions thereof, rounded down to the last full month),

21  multiplied by 10%, and multiplied by 1.25.[3]  *Id.*

---

[1] Langan has consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] The following factual background is based on the allegations of Langan's Complaint, which the Court takes as true for the limited purpose of assessing the sufficiency of the Complaint, and on the contents of its exhibits.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).
[3] This formula is mathematically equivalent to the formula that the DFAS employed in three attachments to Langan's Complaint.  *See* Compl. Exs. B-1, B-2, B-3.  DFAS explained the formula as base pay, multiplied by whole months served, multiplied by 0.125.  The two are equivalent because 12 times years of service is equal to months of service, and 10% times 1.25 is equal to 0.125.

For reasons not discussed in the Complaint, Langan did not separate from the Air Force in April 2011.  On August 12, 2011, Langan requested "45.5 days of excess leave under AFI 36-3003, Table 6, Rule 1 'for an emergency or urgent personal situation.'" *Id.* Ex. B-5.  In doing so, he acknowledged certain conditions of excess leave, including that it is a "no-pay status" and that he would "not accrue any pay and allowances while on excess leave." *Id.*  Langan's commanding officer, Lieutenant Colonel Matthew Atkins, approved his request. *Id.*  It appears that Langan requested excess leave in order to attend law school. *Id.* Ex. B-1.

Langan was approved for separation under the VSP program effective October 1, 2011, and left the Air Force on that date. *See id.* ¶ 34(c) & Exs. C-12, D-20.  In November 2011, Langan received $90,887 in VSP payments. *Id.* ¶ 34(h) at 26.[4]  Letters from the DFAS indicate that this took the form of two separate and duplicative payments, one for $38,000 from the DFAS and one for $52,885.58 from Langan's Field Service Office. *E.g.*, *id.* Ex. D-22.

The DFAS later determined that Langan was entitled to only $70,839.60, less a tax withholding of $17,709.90, for a net payment of $53,129.70, and that Langan therefore owed $37,746.88 as a result of the overpayment. *E.g.*, *id.* Ex. B-2.  The DFAS also claims that Langan owes $3,834.97 due to overpayment of his salary for August 2011. *Id.*  Langan alleges that the DFAS and the FMS attempted to collect Langan's purported debt by sending him letters, reporting the purported debt to private credit reporting agencies, and confiscating a tax refund owed to Langan. *See id.* ¶¶ 34(b), (c), (h).  Langan alleges that Defendants have not provided him an opportunity to inspect government records, enter a written repayment agreement, or request a hearing or waiver. *Id.* ¶ 34(c).

Offices of two United States Senators have inquired with the DFAS on Langan's behalf on multiple occasions. *See id.* Exs. D-20 through D-24.  Langan alleges that there is also an open investigation by the Air Force Inspector General, which was "erroneously closed" in 2012 but reopened after persistence by Langan and his congressional representatives. *Id.* at 6.

Langan filed his Complaint in this Court on June 3, 2014.  Langan contends that (1) the

---

[4] Paragraph 34(h) of Langan's Complaint spans several pages.  This Order cites to page numbers in the Complaint where paragraph citations alone would be unclear or ambiguous.

1   DFAS miscalculated his VSP pay and excess leave, *id.* ¶ 34 (d), (f), (g); (2) his salary for August

2   2011 was correct, *id.* ¶ 34(e); (3) he should have been placed on temporary duty (TDY) rather than

3   excess leave for August and September 2011, and thus should have been paid for that time, *id.*

4   ¶ 34(d); (4) tax should not have been withheld from his VSP pay, *id.* ¶ 34(h) at 26−27; and (5) he

5   should be credited for a tax refund that was confiscated by the Financial Management Service of

6   the Department of the Treasury, *id.* ¶ 34(h) at 26, 28−29.  He asks the Court to "[e]njoin[] the

7   defendants to recalculate the plaintiff's financial compensation above and as a result pay the

8   plaintiff  $36,142.66 immediately," declare this recovery non-taxable VA disability compensation,

9   and enjoin the defendants to mark  all of Langan's debts as paid in full and "remove all history of

10  such debts from the defendants [sic] records and the records of all credit reporting agencies." *Id.*

11  ¶¶ 25(a)−(b) at 33.  Langan also requests his costs and fees, and any other relief to which he is

12  entitled.  *Id.* ¶¶ 25(b)−(c) at 33.

13  Along with his Complaint, Langan filed an Application to Proceed in Forma Pauperis,

14  which the Court granted on September 3, 2014.  Plaintiff filed a Motion for Summons and Service

15  by a Marshal on June 10, 2014, which the Court resolves in this Order.  A case management

16  conference was scheduled for September 5, 2014, which Langan did not attend.

### III.     ANALYSIS

#### A.     Legal Standard

19  Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1) and is granted leave

20  to proceed in forma pauperis, courts must engage in screening and dismiss any claims which: (1)

21  are frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek

22  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see*

23  *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir. 1996).  Federal Rule of Civil Procedure 8(a)(2)

24  provides that a pleading must contain a "short and plain statement of the claim showing that the

25  pleader is entitled to relief."  A complaint that lacks such statement fails to state a claim and must

26  be dismissed.

27  In determining whether a plaintiff fails to state a claim, the court assumes that all factual

28  allegations in the complaint are true.  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th

1    Cir. 1995).  However, "the tenet that a court must accept a complaint's allegations as true is

2    inapplicable to legal conclusions [and] mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S.

3    662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The pertinent

4    question is whether the factual allegations, assumed to be true, "state a claim to relief that is

5    plausible on its face."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).  Thus, to meet this

6    requirement, the complaint must be supported by factual allegations.  *Id.*  Further, a complaint is

7    "frivolous" under § 1915 where there is no subject matter jurisdiction.  *See Pratt v. Sumner*, 807

8    F.2d 817, 819 (9th Cir. 1987) (recognizing the general proposition that a complaint should be

9    dismissed as frivolous under § 1915 where subject matter jurisdiction is lacking).

10   Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must

11   "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v.

12   Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  "A district court should not dismiss a

13   pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the

14   complaint could not be cured by amendment.'"  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

15   2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).

16   Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court

17   must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the

18   litigant uses the opportunity to amend effectively."  *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d

19   1258, 1261 (9th Cir. 1992)).  "Without the benefit of a statement of deficiencies, the pro se litigant

20   will likely repeat previous errors."  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th

21   Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

22         **B.    Langan's Claims**

23              **1.   Claims Against Former Officials**

24   As an initial matter, Langan has named a number of former government officials, in their

25   "official capacit[ies] as former [officials]."  *See, e.g.*, Compl. at 2 ("Leon Edward Panetta, in his

26   official capacity as former Secretary of Defense").  But inherent in the state of being a *former*

27   official is that one no longer has an official capacity.  This principle is illustrated by Rule 25(d) of

28   the Federal Rules of Civil Procedure, which provides that "when a public officer who is a party in

5

an official capacity . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party." The former official is substituted out automatically because he or she no longer has any official capacity in which to be sued, and his or her successor may serve as the official defendant even for claims that arose before the successor took office. Accordingly, the Court DISMISSES WITH PREJUDICE all claims against former officials in their official capacity,[5] to the extent that such claims are intended to be distinct from claims against the corresponding officials currently in office.

Langan names two former officials in their "official and individual capacit[ies]": Steven T. Miller and Douglas H. Shulman, each named as "former Deputy Commissioner, Services & Enforcement, and Acting Commissioner, INTERNAL REVENUE SERVICE."[6] Compl. at 4; *see also id.* ¶¶ 23−24. The Complaint does not, however, allege that either Miller or Shulman took any personal action that would support individual liability. Further, the jurisdictional statute that Langan cites for his claims creates jurisdiction for mandamus actions "to compel *an officer or employee of the United States* or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1391 (emphasis added). As former officers, Miller and Shulman are no longer "officer[s] or employee[s] of the United States." *See id.* The Complaint therefore fails to state a claim on which relief can be granted against Miller or Shulman in their individual capacities, and any such claims that Langan intended are DISMISSED. Langan may amend his Complaint if he wishes to bring claims against these defendants individually and is aware of facts supporting such claims.

### 2. Claims Related to Compensation

Section 1361 grants "the district courts . . . original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This statute can in some circumstances support a claim by a former servicemember seeking to remedy purported violations of military

---

[5] These defendants are: Leon Panetta, Compl. ¶ 8; Robert Gates, *id.* ¶ 9; Eric Fanning, *id.* ¶ 12; Michael Donley, *id.* ¶ 13; Timothy Geithner, *id.* ¶ 16; Steven Miller, *id.* ¶ 23; and Douglas Shulman, *id.* ¶ 24. For each of these defendants, Langan has also named the official currently occupying the corresponding office, so there is no need for automatic substitution pursuant to Rule 25(d).

[6] Shulman was in fact the former Commissioner of Internal Revenue.

regulations. *See, e.g.*, *Woodard v. Marsh*, 658 F.2d 989, 992 (5th Cir. 1981). However, mandamus is an "extraordinary remedy," available only if three elements are satisfied: "(1) the plaintiff's claim is clear and certain; (2) the [defendant official's] duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003) (quoting *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 n.5 (9th Cir. 1997)) (alteration in original). "[T]he existence of alternate remedies . . . precludes reliance on [§] 1361." *Kennecott Copper Corp. v. Costle*, 572 F. 2d 1349, 1356 (9th Cir. 1978).

Here, Langan seeks an injunction requiring the United States government, through one or more of its agencies or officers, to pay Langan $36,142.66, mark Langan's debts as "paid in full," and "remov[e] all history of such debts from the defendants [sic] records and the records of all credit reporting agencies." Compl. ¶ 25(a)−(b) at 33. The Court finds that "other adequate remed[ies]" exist for these claims, and that mandamus relief is thus not available. *See Johnson*, 349 F.3d at 1154. So long as Langan seeks to recover $10,000 or more, jurisdiction for such relief lies exclusively with the Court of Federal Claims under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1).

### a. Claims for Payment

Claims against the federal government for monetary relief, other than claims sounding in tort, are generally governed by the Tucker Act. That statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act encompasses servicemembers' claims for compensation. *See, e.g.*, *Clinton v. Goldsmith*, 526 U.S. 529, 539−40 (1999) (citing Federal Circuit cases involving servicemembers' claims for back pay).

The Tucker Act does not in itself provide a substantive cause of action, but instead creates jurisdiction to consider claims based on some other "money-mandating" obligation, such as a

7

1  statute, regulation, or contract.  *See Metz v. United States*, 466 F.3d 991, 995−96 (Fed. Cir. 2006).
2  Langan's claims that the United States owes him money fall within the Tucker Act because they
3  are "founded either upon" his military salary (which derives from an act of Congress),[7] Air Force
4  regulations related to the VSP program, or an express or implied contract, *see* Compl. ¶ 34(a)
5  ("Plaintiff had/has a contract with the defendant, the USAF to award him VSP . . . ."). Assuming
6  that the United States or any agency named in the Complaint has a duty to pay Langan—which
7  would be necessary to support his mandamus claim—Langan therefore has an "adequate remedy"
8  other than mandamus, and cannot pursue his claim under § 1361.  *See Johnson*, 349 F.3d at 1154.

9        Although Langan may bring a claim under the Tucker Act, he may not do so in this Court.
10 The Tucker Act establishes jurisdiction in the Court of Federal Claims.  28 U.S.C. § 1491(a)(1).
11 The so-called Little Tucker Act, 28 U.S.C. § 1346(a), allows a claim for less than $10,000 to be
12 brought in either a district court or the Court of Federal Claims.  Courts have construed these
13 statutes together as creating exclusive jurisdiction in the Court of Federal Claims for most non-tort
14 claims against the United States that exceed $10,000.  *See M-S-R Public Power Agency v.*
15 *Bonneville Power Admin.*, 297 F.3d 833, 840 (9th Cir. 2002); *Wilkins v. United States*, 279 F.3d
16 782, 785 (9th Cir. 2002).  "A party may not avoid the [Court of Federal Claims' exclusive]
17 jurisdiction by framing an action against the federal government that appears to seek only
18 equitable relief when the party's real effort is to obtain damages in excess of $10,000."  *Marshall*
19 *Leasing Inc. v. United States*, 893 F.2d 1096, 1099 (9th Cir. 1990); *see also Suburban Mortgage*
20 *Assocs., Inc. v. U.S. Dep't of Housing & Urban Dev.*, 480 F.3d 1116, 1124 (Fed. Cir. 2007).

21       Langan has drafted his Complaint to seek only injunctive relief, but asks this Court to
22 "[e]njoin[] the defendants to recalculate the plaintiff's financial compensation above and as a
23 result pay the plaintiff  $36,142.66 immediately."  Compl. ¶ 25(a) at 33.  Under *Marshall Leasing*
24 and *Suburban Mortgage*, this sort of artful pleading cannot circumvent Congress's grant of
25 exclusive jurisdiction to the Court of Federal Claims, because Langan in effect requests an award

---

[7] The Military Pay Act, 37 U.S.C. § 204, is a "money-mandating" statute capable of supporting a Tucker Act claim.  *Matthews v. United States*, 750 F.3d 1320, 1323 (Fed. Cir. 2014) (citing *Metz*, 466 F.3d 991).

United States District Court
Northern District of California

of more than $10,000.

### b. Claims for Adjustment of Records

Langan also seeks adjustments of records related to his compensation, specifically that his debts be marked as paid in full and removed from governmental records. The Tucker Act "permit[s] the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction." *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998). Specifically, the Court of Federal Claims may "issue orders directing . . . correction of applicable records . . . to any appropriate official of the United States" when necessary "[t]o provide an entire remedy and to complete the relief afforded by the [monetary] judgment." 28 U.S.C. § 1491(a)(2).

Langan's requested injunction is the sort of relief contemplated by § 1491(a)(2). Langan's purported debt to the government is based on the proposition that the United States, through the agencies at issue, overpaid Langan when he left the Air Force. If the Court of Federal Claims were to consider Langan's monetary claim discussed above and rule in Langan's favor, however, that judgment would necessarily rest on a finding that the United States had underpaid Langan rather than overpaid him. Under such circumstances Langan's debt would be invalid, and expunging the debt would "complete the relief awarded by the judgment." *See id.*

Assuming for the sake of argument that the defendant officials have a duty to expunge Langan's debt, as would be necessary for Langan to obtain mandamus under 28 U.S.C. § 1361, then Langan can obtain the same relief under the Tucker Act from the Court of Federal Claims. Langan's mandamus claim therefore fails because the Tucker Act provides an "other adequate remedy." *See Johnson*, 349 F.3d at 1154.

### c. Disposition and Leave to Amend

Because the Tucker Act provides an adequate alternative remedy, Langan's claims for monetary relief and expungement of his debts cannot proceed as a mandamus action under § 1361. This Court does not have jurisdiction to consider a Tucker Act claim. The Court therefore DISMISSES these claims, without prejudice to Langan filing an action under the Tucker Act in the Court of Federal Claims based on the same underlying allegations. Alternatively, if Langan

limits his claim to less than $10,000, he may amend his Complaint in this Court to state a claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *See Woodard v. Marsh*, 658 F.2d 989, 992 (5th Cir. 1981) (holding that jurisdiction in the district court was appropriate where an amended complaint "waived all claims for damages in excess of $9,999.99"). Because Langan may elect to amend his Complaint and remain in this Court, it would be premature for the Court to transfer the case to the Court of Federal Claims under 28 U.S.C. § 1631 (allowing a court to transfer a case to cure a jurisdictional defect).

So long as Langan seeks non-tort damages from the United States of $10,000 or more, other questions of the adequacy of his claims related to compensation—including whether the Complaint alleges sufficient facts to support a conclusion that Langan was underpaid, and whether his claims satisfy the test for challenges to military decisions stated in *Wenger v. Monroe*, 282 F.3d 1068, 1072−73 (9th Cir. 2002)—fall outside of this Court's jurisdiction. The Court therefore declines to address such issues at the present time.

### 3. Claims for Wrongful Tax Withholding

One category of relief implicated by Langan's Complaint is not subject to the Tucker Act's grant of exclusive jurisdiction. "A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government *either* in United States district court or in the United States Court of Federal Claims" pursuant to 28 U.S.C. § 1346(a)(1). *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4 (2008) (emphasis added). That statute creates jurisdiction for a "civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or . . . any sum alleged to have been excessive or in any manner wrongfully collected." 28 U.S.C. § 1346(a)(1). Because § 1346(a)(1) creates an "adequate remedy" to recover wrongfully collected taxes, Langan may not bring a mandamus action under § 1361 for that purpose. *See Johnson*, 349 F.3d at 1154.

Even if the Court construes Langan's complaint as seeking relief under § 1346(a)(1), it nevertheless warrants dismissal for failure to comply with the Internal Revenue Code. Before bringing such an action, "the taxpayer must comply with the tax refund scheme established in the Code." *Clintwood Elkhorn*, 553 U.S. at 4 (citing *United States v. Dalm*, 494 U.S. 596, 609−10

(2007)). One aspect of that procedure is that "[n]o suit or proceeding shall be maintained in any court alleged to have been [wrongfully,] erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the [IRS]" pursuant to applicable statutes and regulations. 26 U.S.C. § 7422(a); *see also Clintwood Elkhorn*, 552 U.S. at 4−5. "Filing an administrative refund claim pursuant to the Internal Revenue Code and its implementing regulations is a jurisdictional prerequisite to bringing a refund suit in district court." *Del Elmer v. Metzger*, 967 F. Supp. 398, 404 (S.D. Cal. 1997) (citing, *e.g.*, *Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir. 1985)). A complaint seeking a refund of taxes wrongfully collected must therefore be dismissed if the plaintiff fails to allege that he has properly filed an administrative claim with the IRS. *See id.*

Accordingly, to the extent that Langan seeks to recover for taxes that he alleges were wrongfully withheld, *see* Compl. ¶ 34(h) at 26−29, he must comply with the applicable IRS procedures, including filing an administrative claim. Because the Complaint does not indicate that Langan filed an administrative claim, any claims to recover wrongfully withheld taxes are DISMISSED. If Langan has complied with the applicable regulations he may amend his Complaint to allege such compliance.

### 4. Other Potential Injunctive Relief

The Complaint alleges that the agencies seeking to collect Langan's purported debt failed to comply with 5 U.S.C. § 5514, which establishes certain procedures to collect debts owed to the United States "by deduction from the current pay account" of an indebted federal employee. *See* 5 U.S.C. § 5514(a)(2); Compl. ¶ 34(c). The Complaint does not explicitly request that the Court order Defendants to comply with this statute, but "constru[ing] the pleadings liberally . . . to afford [Langan] the benefit of any doubt," the Court considers whether such relief is available. *See Hebbe*, 627 F.3d at 342.

Section 5514, titled "Installment deduction for indebtedness to the United States," specifically concerns "deductions . . . from basic pay, special pay, incentive pay, retired pay, retainer pay, or . . . other authorized pay." 5 U.S.C. § 5514(a)(1). It does not encompass efforts to collect debts by means other than deductions from employees' pay. Here, the Complaint alleges

11

that the DFAS and other agencies only determined *after* Langan's separation from the Air Force that he purportedly owed a debt to the United States. At that point, Langan was no longer being paid by the government. Langan thus does not allege that the government collected the purported debts by deduction from his pay. Instead, the Complaint alleges that government agencies sent him letters, reported the purported debts to private credit reporting agencies, and "confiscated [Langan's] $17,786 tax refund." *See* Compl. ¶¶ 34(b), (c), (h). None of these actions are governed by § 5514.

Mandamus requires a "clear and certain" claim that a government official owed Langan a duty "so plainly prescribed as to be free from doubt." *Johnson*, 349 F.3d at 1154. Because the United States did not attempt to collect Langan's purported debt by deduction from his pay, the Court finds § 5514 inapplicable to the government's collection efforts, and thus insufficient to establish a duty supporting a mandamus claim. Any claim that Langan may have sought to bring based on § 5514 is therefore DISMISSED. If Langan is aware of efforts by any defendant to improperly collect a debt through deductions from Langan's pay account while he was employed by the Air Force, he may amend his Complaint to bring such a claim.

## IV.  MOTION FOR SERVICE

Langan filed a Motion (Dkt. 8) seeking service by a United States Marshal pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure, which requires such service if a plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915. Although the Court has authorized Langan to proceed in forma pauperis, the Court DENIES the Motion for Service as moot because, as discussed above, Langan's Complaint fails to state a claim upon which relief can be granted. If Langan files an amended complaint sufficient to state a claim, the Court will order service by the United States Marshals Service.

## V.  CONCLUSION

For the reasons discussed above, Langan's Complaint is hereby DISMISSED, and his Motion for Service is DENIED AS MOOT. Langan may amend the Complaint to resolve the deficiencies identified in this Order, except that Langan may not bring claims against former officials in their official capacity. Because an amended complaint completely replaces the

12

1 previous complaint, any amended complaint must include all the claims Langan wishes to present
2 and all of the defendants he wishes to sue—it cannot incorporate the previous complaint by
3 reference. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). **Any amended
4 complaint must be filed no later than November 17, 2014.** If Langan elects to pursue damages
5 exceeding the Tucker Act threshold, he may file a complaint in the Court of Federal Claims.

Langan is encouraged to continue to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance if he continues to prosecute this action in this Court. The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612. Appointments can be made by calling (415) 782-8982 or signing up in the appointment book located outside either office. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: October 2, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge